TUCKER, Judge.
The plaintiff-appellant, Edward E. Terry, brought this suit to recover money allegedly due him by the named corporate defendants in the form of accrued bonuses. He filed a supplemental and amended petition in which he joined Carter A. Strick *538 land as a party defendant, and when Mr. Strickland died the plaintiff filed a second supplemental and amended petition in which he named Strickland’s heirs, who had accepted the deceased’s succession, as defendants. The plaintiff’s pleadings were filed in the alternative. The defendants interposed numerous exceptions and pleas, all of which were overruled by the trial court, and after the suit was heard on its merits, the trial judge rejected the plaintiff’s demands qnd dismissed his suit on the ground that at the outset a partnership had been created between Strickland and Terry, and, since this oral agreement between the parties envisioned Terry’s participation solely in the profits and not in the losses of the business, under the provisions of C.C. Art. 2814 the agreement was null and void, and Terry was not entitled to collect his share of the profits from the business on which agreement had been reached.
From the judgment of the trial court plaintiff has perfected this appeal, and has assigned five specifications of error of the lower court judgment, two of such with which we are principally concerned here, reading as follows:
1. “The trial court erred in not finding that the enterprise was the sole proprietorship of Carter A. Strickland which continued to exist after the incorporation of Slidell Refrigeration and Heating, Inc. and Slidell Metal Fabricators, Inc. and that the heirs of Carter A. Strickland were personally liable to Edward E. Terry for monies shown to be due him from, the business.
% í¡* ij* >|< íjí
5. “The court erred in not finding the heirs of Carter A. Strickland had accepted his succession unconditionally and were, therefore, personally indebted to Edward E. Terry because of the indebtedness of Carter A. Strickland to Edward E. Terry.”
t The facts of the case are somewhat involved., During the year 19S7 Terry went to work for the businesses owned by Carter A. Strickland, known as Slidell Refrigeration & Heating Co. and Slidell Metal Fabricators Co. The plaintiff was paid a starting salary of $40.00 per week which had increased to $175.00 weekly when Terry left the business on December 31, 1966. It is undisputed that orally it was agreed that Terry was to receive a bonus of five (5%) per cent of the net profits earned by the businesses during his first year of work, and that his bonus would increase 5% annually until it had reached 50% of the net profits. This graduated increase continued for about six years until it had reached 30%, but in the following year the bonus was enhanced to 50% of the net gains. The record reflects that Strickland was in complete accord with this method in arriving at the emoluments which were to be received by Terry from the businesses.
The record does not reflect that Terry ever acquired any ownership of the property or corpus of the businesses. He was Strickland’s employee, charged with the management of the concerns. Some emphasis is placed upon the fact that for the years 1960 and 1961 partnership returns were filed for income tax purposes, which supposedly denoted an intention at the outset to create a partnership between the parties. However, with the exception of those two years, at the insistence of Mr. Strickland the income tax returns were filed by the auditors on the basis of sole proprietorships. It is true that partnerships can be confected orally as well as in writing. It is also clear that the mere filing of a partnership income tax return does not in itself create a partnership.
According to the audits prepared by the public accounting firm of Neuberger & Coever the bonuses due Terry had accumulated and increased to the sum of $31,034.-53 over and above withdrawals from January 1, 1959 until January 1, 1965. On March 1, 1965 two corporations, as styled in the title of this suit, were formed. The corporate stock was allocated in the pro *539 portions of 25% each to Terry and Strickland’s three children. Mr. Strickland was not an incorporator nor a shareholder in either of the corporations. The bonus account of Terry was charged with the cost of his share of the stock in the sum of $2,000.00. The remaining bonus sum due Terry of $29,034.53, and the amount due Strickland of $30,068.50 over and above his withdrawals were transferred to the corporate books as debts of the corporations. By December 31, 1966 the bonus accounts (shares of the net profits) due Strickland and Terry were reflected on the corporate books to be the sums of $2,344.20 and $19,374.92 respectively over and above the withdrawals. In his original petition Terry acknowledged that his bonus account should be charged with certain monies and the value of certain equipment which he had received due the businesses in the total sum of $5,212.23. Terry alleged that this total credit left a balance due him of $14,950.19, but, according to his allegations, simple mathematics shows that the claimed balance due him is the sum of $14,162.69.
While it is true that the corporations were formed and created, these entities never operated or functioned. The businesses continued to operate and function in the same manner and under the same circumstances and control as had been the case before the confection of the corporate charters. Mr. Terry continued to manage the businesses with Mr. Strickland having the final say, control and supervision. There was never any formal transfer of the assets of the businesses to the corporations, and in like manner no acknowledgment of responsibility on the part of the corporations of any pre-existing in-debtednesses to be assumed by these entities. There was no resolution by the corporations authorizing the incurring of debt, and the boards of directors of these entities did not hold any meetings. It is clear from the record that the only thing done, other than the confection and filing of the corporate charters, indicative of even the existence of the corporations, were the books kept by the firm of Neuberger & Coever, Certified Public Accountants. Admittedly, the rights of third parties have not intervened nor come into play, and at first blush one would be inclined to reason that none of the parties to- this litigation could deny the existence and legal functioning of these corporations. However, we find throughout the record many instances where both sides to the litigation denied any effectiveness of the formation of the corporations as being dispositive of the dispute between Terry and Strickland. We agree with the trial judge’s analysis on this point insofai* as his holding that the corporations were merely established, and did not affect, alter or change the usual operation of the businesses.
The trial judge initially reasoned in effect that the whole tenor of the relationship between Terry and Strickland was in the nature of a partnership presumably because Terry was to participate in the net profits, and an arrangement, whereby Strickland would be obligated for Terry’s share of the profits, and Terry would not be obligated also for Strickland’s share of the profits, was not countenanced by law under C.C. Arts. ¿183 and 2184, which specifically deraign the right of a partner to receive profits without assuming losses. The last numbered Civil Code Article categorically terms null and void a partnership agreement which provides for a partner to participate in the profits without contributing to the losses. These accepted precepts of law are not questioned.
However, the facts here do not justify and warrant the application of the nomenclature of partnership or at least “joint venture” to which the trial court alludes. As held in the case of Walker v. Delahoussaye, 116 So.2d 884 (La.App. 1st Cir. 1959) “A pre-requisite to the creation of a partnership or joint venture between the parties is an intent by the parties that the business relationship between them shall have the characteristics of a partnership. LSA-C.C. Art. 2805; Johnson v. Johnson, *540 235 La. 226, 103 So.2d 263; Labat v. Labat, 232 La. 627, 95 So.2d 129.” The cited case further pointed to previous jurisprudence which had established “that a mere agreement to share the profits from an enterprise is not sufficient to create the status of a partnership or joint venture.” The case of Pennington v. Simmons, 138 So.2d 189 (La.App. 1st Cir. 1962) is authority for the same legal proposition.
In the case of Fiesta Foods, Inc. v. Ogden, 159 So.2d 577 (La.App. 1st Cir. 1963), application denied 245 La. 956 and 957, 162 So.2d 10 and 11, we held that even though the parties to an enterprise term their relationship a partnership, it will not be considered a partnership between them unless they agreed to share losses as well as profits and that the property or stock of the undertaking forms a community of goods in which each party has a proprietary interest. It was further stated that, where the agreement provides that one party receives a share of the profits of the business but is not responsible for the losses and the capital is owned by the other party, there is no partnership. Also see Sas Jaworsky v. LeBlanc, 239 So.2d 176 (La.App. 3rd Cir. 1970).
The facts of the case at bar clearly precludes the existence of a partnership. The plaintiff was the employee manager of the businesses owned by Mr. Strickland. Terry never did acquire any proprietary interest in the capital or corpus of the respective businesses. Under these circumstances there is no prohibition against an agreement between them that the plaintiff would receive a percentage share of the net profits of the businesses along with his agreed salary.
There remain three other problems to be determined. The first of these is whether the plaintiff has carried the burden of proving his claim. -His own testimony is amply buttressed by that of Mr. Coever, and the plaintiff has adequately established the amount owed to him. The records kept to which the parties subscribed during the entire course of the business relationship between the plaintiff and Mr. Strickland, and as a matter of fact the testimony by deposition in the record, given by Mr. Strickland prior to his death, actually corroborate the profit sharing agreement on which Terry bases his demand. Of course, in his discussions with Mr. Coever, and presumably with Terry, the deceased was unwilling to admit any indebtedness to the plaintiff on account of the accumulation of plaintiff’s shares of the profits during the period of the business relationship, but the deceased did not give or pose any cogent reason for his failure to comprehend the build-up of this indebtedness.
We next consider the plea of prescription filed by the defendants. The agreement to share in the net profits of the businesses is not barred by prescription since the original suit was filed on August 1, 1968, well within the ten year period from the time that the contractual rights accrued to Terry. The ten year prescription set forth in C.C. Art. 3544 is controlling in this case.
The trial court took judicial notice of Mr. Strickland’s death and his succession which was filed in the court a quo. It is admitted that the succession had been opened, and that the heirs who have accepted same are the defendants, Mrs. Lucille Ann Strickland Watts and Mrs. Mary Alice Strickland Morrison.
We consider that the trial court has manifestly erred in interpreting the facts here to envision the creation of a partnership. The plaintiff was an employee of Mr. Strickland, and, as an incident of the employment, there was a contractual right for him to share in the profits.
Having accepted the succession of their deceased father unconditionally and without qualification, his heirs are responsible and obligated for this indebtedness. The other exceptions and pleas raised by the defendants were properly overruled by the trial court, and we are in accord with *541 the ruling of the trial judge that the recon-ventional demand of the defendants is without merit and unsupported by the record.
For the foregoing reasons the judgment of the trial court is reversed insofar as it dismissed plaintiff’s suit against the heirs of Carter A. Strickland, deceased, and, accordingly, there is judgment in favor of plaintiff, Edward E. Terry and against the defendants, Mrs. Lucille Ann Strickland Watts and Mrs. Mary Alice Strickland Morrison, in the full sum and amount of Fourteen Thousand, One Hundred Sixty-Two and 69/100 ($14,162.69) Dollars with legal interest from judicial demand until paid; each of these named defendant heirs is obligated and responsible to the plaintiff for one-half of the principal and interest of this judgment; in all other respects the judgment of the trial court is affirmed.
Each of the defendants, Mrs. Watts and Mrs. Morrison, shall bear one-half of the costs of these proceedings.
Affirmed in part; reversed in part and rendered.